IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| REGINA FEELEY, *et al.*,<br><br>    Plaintiffs,<br><br>v.<br><br>BAYER CORPORATION, BAYER HEALTHCARE LLC, BAYER ESSURE, INC., and BAYER HEALTHCARE PHARMACEUTICALS, INC.,<br><br>    Defendants. | Case No. 18-cv-2090-NJR-GCS |

# MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

Pending before the Court is a Motion to Remand (Doc. 8) filed by Plaintiffs, a Motion to Dismiss (Doc. 9) filed by Defendants, and a Motion to Sever filed by Defendants (Doc. 12). For the reasons set forth below, the Court grants the Motion to Remand, denies as moot the Motion to Dismiss, and denies as moot the Motion to Sever.

## FACTUAL & PROCEDURAL BACKGROUND

According to the Complaint, Defendants Bayer Corporation, Bayer Healthcare LLC, Bayer Essure, Inc., and Bayer Healthcare Pharmaceuticals, Inc. (collectively "Defendants") manufactured, marketed, promoted, distributed and sold a medical device called Essure (Doc. 1-1, p. 12). Essure was marketed as a form of permanent female birth control that was safer and more effective than alternative forms of birth control (*Id.*). The device was developed to prevent pregnancy through the insertion of micro-inserts into the fallopian tubes that then expand and anchor, causing fibrous tissue growth and,

in turn, bilateral occlusion (blockage) of the fallopian tubes (*Id.*). The device was intended to be implanted for each patient's lifetime (*Id.* at p. 13).

Essure is a Class III medical device that received "Conditional Premarket Approval" from the Food and Drug Administration ("FDA") before it was marketed to the public (Doc. 1-1, p. 15-16). The Complaint alleges that the Essure device would "deform, crack, fracture, or break" leading to personal injuries in patients, including Plaintiffs (*Id.* at p. 31-32).

Plaintiffs are composed of seventeen women from Illinois and one from Indiana who suffered health issues and unintended pregnancies stemming from their use of Essure (Doc. 1-1, p. 8-9, ¶13-30). Specifically, they bring claims of negligence, strict products liability, breach of express warranty, breach of implied warranty, and fraud (Doc. 1-1).

The case was initially filed in Madison County state court on October 17, 2018 (Doc. 1-1, p. 2). On November 16, 2018, Defendants removed the case to this Court, asserting that removal is proper because the Court has jurisdiction over the case pursuant to 28 U.S.C. §§ 1331, 1332(a) and 1441 (Doc. 1-1, p. 1). The Amended Notice of Removal alleges that Plaintiff Kelli Payne is a citizen of the state of Indiana (Doc. 27, p. 2). Defendants acknowledge that Ms. Payne is a citizen of Indiana, and her citizenship destroys diversity, but assert that Ms. Payne was fraudulently joined and procedurally misjoined as a plaintiff in an effort to defeat federal diversity jurisdiction (Doc. 27, p. 2).

On November 21, 2018, Plaintiffs moved to remand the case on the basis that Ms. Payne's presence in this case destroys diversity and federal question jurisdiction does not exist (Doc. 8). Plaintiffs specifically argue that Ms. Payne has not been fraudulently joined

or procedurally misjoined. Plaintiffs also argue that federal question jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1441 does not exist because there is no federal remedy for a violation of the Federal Food, Drug, and Cosmetic Act, and a federal preemption defense does not establish federal question jurisdiction. On December 21, 2018, Defendants filed a response in opposition to Plaintiffs' motion to remand (Doc. 16). Plaintiffs filed a timely reply brief (Doc. 20).

On November 23, 2018, Defendants moved to dismiss the case on the basis that Plaintiff's claims are preempted by federal law, they fail to plausibly plead a claim for relief, and they are time-barred (Docs. 9 and 10). On January 2, 2019, Plaintiffs filed a response in opposition to Defendants' motion to dismiss (Doc. 17). Defendants filed a timely reply brief (Doc. 25).

Also on November 23, 2018, Defendants moved to sever Plaintiffs' claims on the basis that they are misjoined under Federal Rule of Civil Procedure 20 (Docs. 12 and 13). On January 2, 2019, Plaintiffs filed a response in opposition to Defendants motion to sever (Doc. 18). A week later, Defendants filed a reply brief (Doc. 22).

### LEGAL STANDARD

Removal is governed by 28 U.S.C. § 1441, which provides, in pertinent part, that "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a); *see also Pooter v. Janus Inv. Fund*, 483 F. Supp. 2d 692, 694-95 (S.D. Ill. 2007). Under 28 U.S.C. § 1332, a federal district court has original subject matter jurisdiction over actions involving complete diversity between the parties

plus an amount in controversy exceeding $75,000, exclusive of interest and costs. *See* 28 U.S.C. § 1332(a)(1); *LM Ins. Corp. v. Spaulding Enters. Inc.*, 533 F.3d 542, 547 (7th Cir. 2008). Complete diversity means that "none of the parties on either side of the litigation may be a citizen of a state of which a party on the other side is a citizen." *Howell v. Tribune Entertainment Co.*, 106 F.3d 215, 217 (7th Cir.1997) (citations omitted).

Under 28 U.S.C. § 1331, a federal district court also has original jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." Federal courts may only exercise jurisdiction under § 1331 if "a well-pleaded complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." *Empire Healthchoice Assur., Inc. v. McVeigh*, 547 U.S. 677, 690 (2006).

The party seeking removal, as the proponent of federal subject matter jurisdiction, has the burden of proof as to the existence of such jurisdiction. *See Meridian Sec. Ins. Co. v. Sadowski*, 441 F.3d 536, 540 (7th Cir. 2006); *see also Anglin v. Bristol-Myers Squibb Co.*, No. 12-60, 2012 WL 1268143, at *1 (S.D. Ill. Apr. 13, 2012). "'Courts should interpret the removal statute narrowly and presume that the plaintiff may choose his or her forum.' Put another way, there is a strong presumption in favor of remand." *Fuller v. BNSF Ry. Co.*, 472 F. Supp. 2d 1088, 1091 (S.D. Ill. 2007) (quoting *Doe v. Allied-Signal, Inc.*, 985 F.2d 908, 911 (7th Cir. 1993)); *Kalbfleisch ex rel. Kalbfleisch v. Columbia Community Unit School Dist. Unit No. 4*, 644 F. Supp. 2d 1084, 1087 (S.D. Ill. 2009). "Doubts concerning removal must be resolved in favor of remand to the state court." *Alsup v. 3-Day Blinds, Inc.*, 435 F. Supp. 2d 838, 841 (S.D. Ill. 2006).

ANALYSIS

Defendants, the parties invoking removal authority, argue that Ms. Payne's claims are fraudulently joined and procedurally misjoined, so the Court has diversity jurisdiction over this case. Defendants further argue that the Court also has federal question jurisdiction over this case.

## I. Fraudulent Joinder

Defendants argue that Ms. Payne's claims are fraudulently joined because they are time barred under both Indiana and Illinois law. Plaintiffs argue that Illinois law applies, the Illinois statute of repose does not bar their claims, and more discovery is needed to determine whether Ms. Payne's claims are barred by the statute of limitations.

The "fraudulent joinder" doctrine prohibits a plaintiff from joining a non-diverse defendant in an action simply to destroy diversity jurisdiction. *Schwartz v. State Farm Mut. Auto. Ins. Co.*, 174 F.3d 875, 878 (7th Cir. 1999); *Gottlieb v. Westin Hotel Co.*, 990 F.2d 323, 327 (7th Cir. 1993). If the removing defendant establishes fraudulent joinder, the district court considering removal may "disregard, for jurisdictional purposes, the citizenship of certain nondiverse defendants, assume jurisdiction over a case, dismiss the nondiverse defendants, and thereby retain jurisdiction." *Schur v. L.A. Weight Loss Centers, Inc.*, 577 F.3d 752, 763 (7th Cir. 2009).

"To establish fraudulent joinder, a removing defendant must show that, after resolving all issues of fact *and law* in favor of the plaintiff, the plaintiff cannot establish a cause of action against the in-state defendant." *Morris v. Nuzzo*, 718 F.3d 660, 666 (7th Cir. 2013) (emphasis in original). Put differently, the defendant has the "heavy burden" of showing that the plaintiff's claim has "no chance of success" against the non-diverse

defendant. *Poulos v. Naas Foods, Inc.*, 959 F.2d 69, 73 (7th Cir. 1992). The Court's role in evaluating allegations of fraudulent joinder is "to determine whether Plaintiff's complaint provides a reasonable basis for predicting that the plaintiff might be able to recover against an in-state defendant . . . not to ascertain the merits of [the] claim." *Asperger v. Shop Vac Corp.*, 524 F. Supp. 2d 1088, 1096 (S.D. Ill. 2007).

Defendants have not cited any controlling case law establishing that the doctrine of fraudulent joinder applies to plaintiffs. In support of the fraudulent joinder doctrine, they cite to *Schwartz v. State Farm Mut. Auto. Ins. Co.*, 174 F.3d 875, 879 (7th Cir. 1999), but this decision addressed fraudulent joinder of a non-diverse defendant. *See Schwartz*, 174 F.3d at 879 (affirming dismissal of a case against a defendant that was fraudulently joined). Other Seventh Circuit cases cited by the Court above discuss fraudulent joinder in the context of a non-diverse defendant.

In *Reeves*, a retired judge in this district considered the question of whether a defendant could use the fraudulent joinder doctrine against a plaintiff. *Reeves v. Pfizer, Inc.*, 880 F. Supp. 2d 926, 928 (S.D. Ill. 2012). Judge G. Patrick Murphy noted a split of authority on the issue and ultimately declined to extend fraudulent joinder to plaintiffs. *Id.* ("Without contrary direction from the Seventh Circuit, this Court finds that extending the doctrine of fraudulent joinder to joinder of plaintiffs would be, like fraudulent misjoinder, a massive increase to this Court's jurisdiction.").

Other courts in this district have similarly declined to apply fraudulent joinder in this context. *See Hinrichs v. Dow Chemical Co.*, Case No. 16-CV-1284-PP, 2017 WL 2773681, at *5 (June 26, 2017) (declining to apply the fraudulent joinder doctrine to plaintiffs and noting that "as far as this court can find, the Seventh Circuit has not expanded the

fraudulent joinder doctrine to plaintiffs…."); *see also Price v. Smith*, Case No. 11-C-0763, 842 F. Supp. 2d 1111, 1114 (E.D. Wisc. Feb. 2, 2012) (the defendant did not provide "any authority indicating that the doctrine of fraudulent joinder applies to plaintiffs" and the court concluded that fraudulent joinder does not provide a basis for dismissal of a joined plaintiff). The Court is not aware of any case from the Seventh Circuit Court of Appeals that has expanded the fraudulent joinder doctrine to plaintiffs in the recent years. Thus, the Court declines the apply the doctrine to Ms. Payne.

**II.     Fraudulent Misjoinder (also known as "procedural misjoinder")**

Defendants also argue that Ms. Payne's claims are fraudulently misjoined. But Defendants have not cited to any controlling case law that provides support for the Court to apply such a doctrine. In fact, courts in this district consistently reject application of the doctrine of fraudulent or procedural misjoinder. *See, e.g., Roland v. Janssen Research & Development, LLC,* No. 3:17-cv-00582-DRH, 2017 WL 3033786, at *3 (S.D. Ill. Jul. 18, 2017); *In re Yasmin & Yaz (Drospirenone) Mktg., Sales Practices & Prod. Liab. Litig.*, 779 F. Supp. 2d 846, 853 (S.D. Ill. 2011); *Rutherford v. Merck & Co.*, 428 F. Supp. 2d 842, 851 (S.D. Ill. 2006); *Reeves*, 880 F. Supp. 2d at 928; *Wilson v. Pfizer, Inc.*, No. CIV. 11-1078-GPM, 2012 WL 1036824, at *2 (S.D. Ill. Mar. 27, 2012). Specifically, courts in this district have consistently refused to follow the doctrine outlined in *Tapscott v. MS Dealer Service Corp.*, 77 F.3d 1353 (11th Cir. 1996), due to the lack of clarity and ease of application, among other reasons. *Baker v. Johnson & Johnson*, 709 F. Supp. 2d 677, 686 (S.D. Ill. 2010) ("courts have struggled with virtually every aspect of the meaning and scope of the doctrine"). The Court declines to recognize such doctrine, until such time as the doctrine is addressed by the Supreme Court of the United States or the Seventh Circuit Court of Appeals. Thus, the Court

fraudulent joinder doctrine to plaintiffs…."); *see also Price v. Smith*, Case No. 11-C-0763, 842 F. Supp. 2d 1111, 1114 (E.D. Wisc. Feb. 2, 2012) (the defendant did not provide "any authority indicating that the doctrine of fraudulent joinder applies to plaintiffs" and the court concluded that fraudulent joinder does not provide a basis for dismissal of a joined plaintiff). The Court is not aware of any case from the Seventh Circuit Court of Appeals that has expanded the fraudulent joinder doctrine to plaintiffs in the recent years. Thus, the Court declines the apply the doctrine to Ms. Payne.

**II.     Fraudulent Misjoinder (also known as "procedural misjoinder")**

Defendants also argue that Ms. Payne's claims are fraudulently misjoined. But Defendants have not cited to any controlling case law that provides support for the Court to apply such a doctrine. In fact, courts in this district consistently reject application of the doctrine of fraudulent or procedural misjoinder. *See, e.g., Roland v. Janssen Research & Development, LLC,* No. 3:17-cv-00582-DRH, 2017 WL 3033786, at *3 (S.D. Ill. Jul. 18, 2017); *In re Yasmin & Yaz (Drospirenone) Mktg., Sales Practices & Prod. Liab. Litig.*, 779 F. Supp. 2d 846, 853 (S.D. Ill. 2011); *Rutherford v. Merck & Co.*, 428 F. Supp. 2d 842, 851 (S.D. Ill. 2006); *Reeves*, 880 F. Supp. 2d at 928; *Wilson v. Pfizer, Inc.*, No. CIV. 11-1078-GPM, 2012 WL 1036824, at *2 (S.D. Ill. Mar. 27, 2012). Specifically, courts in this district have consistently refused to follow the doctrine outlined in *Tapscott v. MS Dealer Service Corp.*, 77 F.3d 1353 (11th Cir. 1996), due to the lack of clarity and ease of application, among other reasons. *Baker v. Johnson & Johnson*, 709 F. Supp. 2d 677, 686 (S.D. Ill. 2010) ("courts have struggled with virtually every aspect of the meaning and scope of the doctrine"). The Court declines to recognize such doctrine, until such time as the doctrine is addressed by the Supreme Court of the United States or the Seventh Circuit Court of Appeals. Thus, the Court

fraudulent joinder doctrine to plaintiffs…."); *see also Price v. Smith*, Case No. 11-C-0763, 842 F. Supp. 2d 1111, 1114 (E.D. Wisc. Feb. 2, 2012) (the defendant did not provide "any authority indicating that the doctrine of fraudulent joinder applies to plaintiffs" and the court concluded that fraudulent joinder does not provide a basis for dismissal of a joined plaintiff). The Court is not aware of any case from the Seventh Circuit Court of Appeals that has expanded the fraudulent joinder doctrine to plaintiffs in the recent years. Thus, the Court declines the apply the doctrine to Ms. Payne.

**II.     Fraudulent Misjoinder (also known as "procedural misjoinder")**

Defendants also argue that Ms. Payne's claims are fraudulently misjoined. But Defendants have not cited to any controlling case law that provides support for the Court to apply such a doctrine. In fact, courts in this district consistently reject application of the doctrine of fraudulent or procedural misjoinder. *See, e.g., Roland v. Janssen Research & Development, LLC,* No. 3:17-cv-00582-DRH, 2017 WL 3033786, at *3 (S.D. Ill. Jul. 18, 2017); *In re Yasmin & Yaz (Drospirenone) Mktg., Sales Practices & Prod. Liab. Litig.*, 779 F. Supp. 2d 846, 853 (S.D. Ill. 2011); *Rutherford v. Merck & Co.*, 428 F. Supp. 2d 842, 851 (S.D. Ill. 2006); *Reeves*, 880 F. Supp. 2d at 928; *Wilson v. Pfizer, Inc.*, No. CIV. 11-1078-GPM, 2012 WL 1036824, at *2 (S.D. Ill. Mar. 27, 2012). Specifically, courts in this district have consistently refused to follow the doctrine outlined in *Tapscott v. MS Dealer Service Corp.*, 77 F.3d 1353 (11th Cir. 1996), due to the lack of clarity and ease of application, among other reasons. *Baker v. Johnson & Johnson*, 709 F. Supp. 2d 677, 686 (S.D. Ill. 2010) ("courts have struggled with virtually every aspect of the meaning and scope of the doctrine"). The Court declines to recognize such doctrine, until such time as the doctrine is addressed by the Supreme Court of the United States or the Seventh Circuit Court of Appeals. Thus, the Court

declines to apply the doctrine to Ms. Payne.

## III. Federal Question Jurisdiction

In Defendants' Amended Notice of Removal, they claim alternatively that this Court also has federal question jurisdiction because "Plaintiffs plead violations of federal law on the face of their Complaint" because the state-law claims implicate significant federal issues (Doc. 27, p. 4; Doc. 16, p. 12). Plaintiffs argue that, although they have alleged that Defendants' conduct violates the requirements of the Federal Food, Drug, and Cosmetic Act ("FDCA"), this does not create federal question jurisdiction.

Defendants' argument is based primarily on the Supreme Court's holding in *Grable & Sons Metal Prods., Inc. v. Darue Engineering & Manufacturing*, which articulated a test for determining whether a state law claim may "arise under" federal law for jurisdictional purposes. 545 U.S. 308 (2005). The *Grable* test provides that a court will have federal question jurisdiction over a state law claim "'if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Grable*, 545 U.S. at 314.

Plaintiffs' complaint alleges state law causes of action based on the manufacture, promotion, marketing, and distribution of Essure. Defendants cite to *Burrell*, a case where the Court found that similar Essure-related claims were properly removed under 28 U.S.C. § 1331 because "[f]ederal oversight of the Bayer defendants is a necessary part of this case, and plaintiff raises the question of the Bayer defendants' duties under the FDCA, as amended by the MDA, and whether they complied with such responsibilities." *Burrell v. Bayer Corp.*, Case No. 1:17-cv-00031-MOC-DCK, 2017 WL 1032524, at *2

(W.D.N.C. Mar. 17, 2017). Notably, however, since the time of briefing, the district court's judgment in *Burrell* was vacated by the Fourth Circuit Court of Appeals. *Burrell v. Bayer Corp.*, 918 F.3d 372 (4th Cir. 2019).

The Fourth Circuit specifically disagreed with the district court's conclusion that the state law claims "necessarily raised" federal questions. *Id.* at 381. Although the Fourth Circuit acknowledged that "there might be some other theory on which the … complaints necessarily raise federal questions," it concluded that exercising federal jurisdiction would nonetheless be improper because the Bayer defendants were unable to establish that the federal issues raised were "substantial" or that conferring federal jurisdiction would be "consistent with congressional judgment about the sound division of labor between state and federal courts." *Id.* at 384 (quoting *Grable*, 545 U.S. at 313).

The Court does not find the federal issues raised in this case to be substantial. Defendants' cited concerns about uniform interpretation of the federal regulations governing Class III medical devices does not mean that such issues are substantial enough to require that the claims be heard in federal court. *See Burrell*, 918 F.3d at 384-85 ("An alleged 'powerful federal interest' in uniform interpretation of the FDCA, a federal statute, did not change the Court's calculus; a need for uniformity is properly addressed through preemption, not by opening the doors to federal jurisdiction"); *see Vasquez v. Bayer Corporation*, Civil Action No. 18-392, 2019 WL 3753140, at *1 (W.D. Penn. May 15, 2019) (similarly finding "a need for uniformity" in applying a federal statute to be an insufficient justification to confer federal jurisdiction). Moreover, "the mere fact that a state court may have to reference federal regulations in determining the outcome of a claim is not sufficient by itself to create a substantial federal question." *Lancaster v. Astellas*

*Pharma, Inc.*, No. 08-cv-0133-MJR, 2008 WL 4378441, at *4 (S.D. Ill. 2008).

Likewise, the Court finds that conferring federal jurisdiction would disrupt the federal-state balance. *See McLaughlin v. Bayer Essure, Inc.*, Civil Action No. 14-7315, 2018 WL 3535142 (E.D. Pa. July 23, 2018) ("we . . . align ourselves with other recent cases that have found the exercise of jurisdiction over Essure cases to disrupt the federal-state balance) (collecting cases)). If such claims are enough to rise to the level of a substantial federal question, it would force federal courts into a myriad of actions to resolve issues based solely on common, state law tort claims.

As Judge Mark Hornak of the Western District of Pennsylvania pointed out, "it is compelling that Congress declined to provide a private federal cause of action for violations of the 1976 Medical Device Amendments to the Federal Food, Drug, and Cosmetic Act while allowing states to provide a damages remedy for claims premised on violations of FDA regulations." *Vasquez*, 2019 WL 3753140, at *3 (citing *Burrell*, 918 F.3d at 385). The Court agrees that "this evinces a Congressional intention to permit state-law claims implicating the FDCA to be adjudicated by the state courts, which undercuts the assertion that the state-law claims raised in the Complaint raise federal issues that are so substantial that they are part of the 'special and small category' of state-law claims for which federal 'arising under' jurisdiction exists." *Id.* (citing *Gunn v. Minton*, 568 U.S. 251, 258 (2013)).

For all of these reasons, the Court declines to exercise federal question jurisdiction over this case. *See, e.g. Rios v. Bayer Corporation*, Case No. 16-CV-1010-SMY-RJD, 2016 WL 5929246, at *2-3 (S.D. Ill. Oct. 12, 2016) (declining to exercise federal question jurisdiction over a similar case alleging negligence, strict product liability and breach of warranty

claims arising from the plaintiffs' use of Essure).

## CONCLUSION

For the reasons set forth above, the Court **GRANTS** Plaintiffs' Motion to Remand (Docs. 8 & 9). The Court **REMANDS** this case to the Circuit Court for the Third Judicial Circuit, Madison County, Illinois, for lack of federal subject matter jurisdiction. In light of this Order, the Court **DENIES as moot** the Motion to Dismiss (Doc. 9) and **DENIES as moot** Motion to Sever (Doc. 12).

**IT IS SO ORDERED.**

DATED: September 9, 2019

*[signature]*
_____
**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**